SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

THOMAS D. HYLAND and MARY JEAN HYLAND,

Plaintiffs,

- against -

DAVOL, INC., and C.R. BARD, INC.,

Defendants.

Index No. 1758/07

**SUMMONS**

Plaintiff designates Nassau County as the place of trial.

The basis of venue is Plaintiff's residence:
3816 Park Avenue
Seaford, New York 11783

**You are hereby summoned** to answer the complaint in this action, and to serve a copy of your answer or, if the complaint is not served with this summons, to serve a notice of appearance on the plaintiff's attorney(s) within twenty days after the service of this summons exclusive of the day of service where service is made by delivery upon you personally within the state, or within 30 days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
January 25, 2007

SULLIVAN PAPAIN BLOCK
McGRATH & CANNAVO PC.

By: ____________________
Andrew J. Carboy
Attorneys for Plaintiffs
Office and P.O. Address
120 Broadway
New York, New York 10271
(212) 732-9000

RECEIVED
JAN 30 2007
NASSAU COUNTY

**Defendants' Addresses**

**DAVOL, INC.**

100 Sockanossett Crossroad
Cranston, Rhode Island 02920

**C.R. BARD, INC.**

Care of the Secretary of State of New York

and

C.R. Bard, Inc.
730 Central Avenue
Murray Hill, New Jersey 07974

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

---------------------------------------------------------------------X

THOMAS D. HYLAND and MARY JEAN HYLAND, Index No. 1758/07

Plaintiffs,

**VERIFIED COMPLAINT**

- against -

DAVOL, INC., and C.R. BARD, INC.,

Defendants.

---------------------------------------------------------------------X

Plaintiffs, THOMAS D. HYLAND and MARY JEAN HYLAND, by and through their attorneys, Sullivan Papain Block McGrath & Cannavo P.C., brings this action against Defendants, DAVOL, INC., and C.R. BARD, INC., and allege upon information and belief, and at all times hereinafter mentioned, as follows:

RECEIVED JAN 30 2007

## PARTIES

1. Plaintiff, THOMAS D. HYLAND, hereinafter "Mr. Hyland" or "Plaintiff," was and is a resident of the County of Nassau, State of New York, and resides at 3816 Park Avenue, Seaford, New York 11783.

2. At all times herein mentioned, Plaintiff MARY JEAN HYLAND, was and is the lawfully married spouse of Mr. Hyland.

3. Plaintiffs bring this action for damages for the severe and permanent personal injuries he sustained, as well for the loss of services, society, companionship and affection sustained by Plaintiff MARY JEAN HYLAND as a result of said injuries, in consequence of his use of a defective implantable product known as a "Composix Kugel Hernia Patches," used to repair ventral or incisional hernias, bearing lot number 43IND198 and product code 0010202

("subject patch") designed, tested, developed, manufactured, labeled, distributed, promoted, marketed and sold by Defendants DAVOL, INC. ("DAVOL"), and C.R. BARD, INC. ("BARD") (collectively, "Defendants").

4. At all times herein mentioned, Defendant DAVOL was and is incorporated in Delaware, with its principal place of business in Rhode Island, the address being 7100 Sockanossett Crossroad, Cranston, Rhode Island 02920.

5. At all times herein mentioned, Defendant DAVOL was and is authorized to do business in the State of New York.

6. At all times herein mentioned, Defendant DAVOL did and does business and solicits business in New York.

7. At all times herein mentioned, Defendant BARD was and is incorporated in New Jersey, with its principal place of business in New Jersey, the address being 730 Central Avenue, Murray Hill, New Jersey.

8. At all times herein mentioned, Defendant BARD was and is authorized to do business in the State of New York.

9. At all times herein mentioned, Defendant BARD did and does business and solicits business in New York.

10. At all times herein mentioned, Defendant BARD had and has a registered agent for service of process, CT Corporation Systems, located at 111 8th Avenue, New York, New York 10011.

11. At all times herein mentioned, Defendant DAVOL was and is a wholly owned subsidiary of defendant BARD.

12. At all times relevant, Defendant DAVOL was a mere instrumentality, conduit or alter ego for its parent, Defendant BARD.

13. At all times relevant, Defendant BARD wholly dominated and continues to dominate the workings and decision-making of DAVOL so that Defendant DAVOL became a conduit for its parent, Defendant BARD. At all relevant times, Defendant DAVOL was undercapitalized and performed no independent business.

14. At all times herein mentioned, Defendant DAVOL designed, tested, developed, manufactured, labeled, distributed, marketed and sold Composix Kugel Hernia Patches for repair of hernias.

15. At all times herein mentioned, Defendant BARD designed, tested, developed, manufactured, labeled, distributed, marketed and sold Composix Kugel Hernia Patches for repair of hernias.

16. At all times herein mentioned, Defendant DAVOL derived substantial revenue from goods used or services provided in the State of New York.

17. At all times herein mentioned, Defendant BARD derived substantial revenue from goods used or services provided in the State of New York.

18. At all times herein mentioned, Defendant DAVOL derived substantial revenue from interstate commerce.

19. At all times herein mentioned, Defendant BARD derived substantial revenue from interstate commerce.

20. At all times herein mentioned, Defendant DAVOL expected or should have reasonably expected its acts to have consequences in the State of New York.

21. At all times herein mentioned, Defendant BARD expected or should have reasonably expected its acts to have consequences in the State of New York.

22. The activities of Defendant DAVOL in New York include, but are in no way limited to, the marketing, promotion, distribution, and sales of Composix Kugel Hernia Patches, including the subject patch.

23. The activities of Defendant BARD in New York include, but are in no way limited to, the marketing, promotion, distribution, and sales of Composix Kugel Hernia Patches, including the subject patch.

24. This Court has jurisdiction over the subject matter and parties to this action.

**AS AND FOR A FIRST COUNT (DECEPTIVE TRADE PRACTICES) AGAINST DEFENDANTS**

25. Plaintiff hereby adopts, repeats and realleges by reference herein all the allegations contained in paragraphs "1" through "24" as though more fully set forth herein.

26. At all times herein mentioned, Defendant DAVOL designed, tested, developed, manufactured, labeled, distributed, promoted, marketed and sold Composix Kugel Hernia Patches including the subject patch, a "Large Oval Bard Composix Kugel Hernia Patch" with lot number 43IND198 and product code 0010202.

27. At all times herein mentioned, Defendant BARD designed, tested, developed, manufactured, labeled, distributed, promoted, marketed and sold Composix Kugel Hernia Patches including the subject patch, a "Large Oval Bard Composix Kugel Hernia Patch" with lot number 43IND198 and product code 0010202.

28. The intended purpose of the Composix Kugel Hernia Patch is to reconstruct soft tissue, including the repair of ventral or incisional hernias. According to the United States Food

and Drug Administration, the Composix Kugel Hernia Patch is designed and manufactured to be *"placed behind the hernia defect through a small incision. The patch is then held open by a 'memory recoil ring' that allows the patch to be folded for insertion and later spring open and lay flat once it is in place."* (*See*, "Class 1 Recall: Bard Composix Kugel Mesh Patch, superseded with an updated notice on March 31, 2006 to include additional product codes and lot numbers recalled by the manufacturer." United States Food and Drug Administration posting dated March 2006)

29. Defendant DAVOL designs, tests, develops, manufactures, labels, distributes, promotes, markets and sells Composix Kugel Hernia Patches for implantation in patients.

30. Defendant BARD designs, tests, develops, manufactures, labels, distributes, promotes, markets and sells Composix Kugel Hernia Patches for implantation in patients.

31. On or about November 15, 2004, Mr. Hyland underwent surgical implantation of the subject patch at South Nassau Communities Hospital.

32. Defendant DAVOL sold and/or provided the subject patch to Mr. Hyland and/or South Nassau Communities Hospital and/or the implanting surgeons.

33. Defendant BARD sold and/or provided the subject patch to Mr. Hyland and/or South Nassau Communities Hospital and/or the implanting surgeons.

34. The subject patch was implanted for its intended purpose: soft tissue reconstruction and treatment and management of a hernia.

35. Defendant DAVOL designed the subject patch and its component parts, including the memory recoil ring and its housing.

36. Defendant DAVOL tested the subject patch and its component parts, including the memory recoil ring and its housing.

37. Defendant DAVOL developed the subject patch and its component parts, including the memory recoil ring and its housing.

38. Defendant DAVOL manufactured the subject patch and its component parts, including the memory recoil ring and its housing.

39. Defendant DAVOL labeled, through product and package inserts, the subject patch and its component parts, including the memory recoil ring and its housing.

40. Defendant DAVOL distributed the subject patch and its component parts, including the memory recoil ring and its housing.

41. Defendant DAVOL promoted the subject patch and its component parts, including the memory recoil ring and its housing.

42. Defendant DAVOL marketed the subject patch and its component parts, including the memory recoil ring and its housing.

43. Defendant DAVOL sold the subject patch and its component parts, including the memory recoil ring and its housing.

44. Defendant DAVOL has disclosed, albeit in a manner untimely for Mr. Hyland and his physical health, that its Composix Kugel Hernia Patches, including the subject patch, and component parts, including the memory recoil ring and its housing, contain design and manufacturing defects.

45. Defendant BARD designed the subject patch and its component parts, including the memory recoil ring and its housing.

46. Defendant BARD tested the subject patch and its component parts, including the memory recoil ring and its housing.

47. Defendant BARD developed the subject patch and its component parts, including the memory recoil ring and its housing.

48. Defendant BARD manufactured the subject patch and its component parts, including the memory recoil ring and its housing.

49. Defendant BARD labeled, through product and package inserts, the subject patch and its component parts, including the memory recoil ring and its housing.

50. Defendant BARD distributed the subject patch and its component parts, including the memory recoil ring and its housing.

51. Defendant BARD promoted the subject patch and its component parts, including the memory recoil ring and its housing.

52. Defendant BARD marketed the subject patch and its component parts, including the memory recoil ring and its housing.

53. Defendant BARD sold the subject patch and its component parts, including the memory recoil ring and its housing.

54. Defendant BARD has disclosed, albeit in a manner untimely for Mr. Hyland and his physical health, that its Composix Kugel Hernia Patches, including the subject patch, and component parts, including the memory recoil ring and its housing, contain design and manufacturing defects.

55. On or about March 24, 2006, Defendants DAVOL and BARD expanded a previous recall of certain of their Composix Kugel Hernia Patches. The expanded recall included the subject patch.

56. At that time, Defendants DAVOL and BARD disclosed that memory recoil ring breakages had been reported. Specifically, Defendants "*identified the potential for…recoil ring*

*weld breakage on lots of product code numbers 0010202…,"* and others, a range that plainly included the product code number of the subject patch. Moreover, Defendants DAVOL and BARD revealed that the lot number of the subject patch, 43IND198, was included in the recall. (*See*, "Important Patient Management Information," correspondence dated March 24, 2006 and authored by David Ciavarella, M.D., Staff Vice President, Corporate Clinical Affairs of DAVOL).

57. Defendants DAVOL and BARD advised and admitted that the welds of the recoil ring of the subject patch, like those of other Composix Kugel Hernia Patches designed, tested, developed, manufactured, labeled, distributed, promoted, marketed and sold by the Defendants, *"could break under the stress placed on the large sized products during placement which could lead to potential patient complications such as abdominal pain, bowel perforation or chronic enteric fistulas."*

58. Unfortunately, these warnings and disclosure came too late for Mr. Hyland, who had the subject patch previously inserted well in advance of the recall.

59. Mr. Hyland has suffered and continues to suffer and endure great physical and emotional pain, suffering, serious and permanent physical injuries, and associated economic loss, as a proximate result of the subject patch, defective in design and defective in manufacture.

60. Mr. Hyland's injuries include, but are not limited to: bowel perforation; sepsis; and formation of fistulae. Mr. Hyland has required, and will continue to require, surgeries for the management and care of injuries sustained in consequence of the subject patch, including: laparotomies; placement of drains; bowel resection; and creation of an ostomy. At the time of the filing of this pleading, Mr. Hyland has spent over three straight months in a hospital for treatment of these injuries.

61. Before, after, and at the time of the manufacture, promotion, marketing and sale of the subject patch to Mr. Hyland, Defendants DAVOL and BARD possessed detailed technical information and had knowledge that certain of their Composix Kugel Hernia Patches, including the subject patch, posed potentially significant and life-threatening hazards to patients relying upon them.

62. Defendants DAVOL and BARD concealed this information from Mr. Hyland and his treating physicians, as well as the consuming public and physicians in general.

63. As set forth above, Defendants DAVOL and BARD had a duty to exercise reasonable care in the design, testing, development, manufacture, labeling, distribution, promotion, marketing and sale of their Composix Kugel Hernia Patches and their component parts, including the subject patch. This duty included an obligation to ensure that the Composix Kugel Hernia Patches and/or any component part did not fail, break or splinter because of a design and/or manufacturing defect when used as instructed by the defendants for their intended and foreseeable purpose(s). This duty also included a duty to warn of known defects that may lead to serious injury or risk of serious injury.

64. Defendants DAVOL and BARD made misrepresentations of material facts, including but not limited to:

a. misrepresenting that their Composix Kugel Hernia Patches, including the subject patch, were fit for their intended uses and of merchantable quality;

b. misrepresenting that Composix Kugel Hernia Patches, including the subject patch, were reliable;

c. misrepresenting that Composix Kugel Hernia Patches, including the subject patch, were safe and effective for the treatment of medical conditions such as those affecting Mr. Hyland;

d. misrepresenting that Composix Kugel Hernia Patches, including the subject patch, would function as intended when necessary;

e. misrepresenting that Composix Kugel Hernia Patches, including the subject patch, would not function improperly;

f. misrepresenting that Composix Kugel Hernia Patches, including the subject patch, were not defective;

g. misrepresenting that Composix Kugel Hernia Patches, including the subject patch, would not otherwise fail to function as intended when put to their expected, intended, foreseeable, and/or ordinary purpose(s); and

h. misrepresenting that Composix Kugel Hernia Patches, such as the subject patch, were not inherently dangerous.

65. Defendants DAVOL and BARD made omissions of material facts, known to them, and which they were obligated to disclose, including but not limited to:

a. omitting to disclose the material fact that Composix Kugel Hernia Patches, such as the subject patch, were defective, such that they and/or their component parts would break and/or splinter upon insertion, and/or otherwise fail to function as intended;

b. omitting to disclose the material fact that the Defendants knew of numerous failures of Composix Kugel Hernia Patches;

c. omitting to disclose the material fact that the Composix Kugel Hernia Patches were not "reliable;"

d. omitting to disclose the material fact that Composix Kugel Hernia Patches, including the subject patch, were not safe and effective in the treatment of the medical conditions, such as that affecting Mr. Hyland, for which they were intended.

e. omitting to disclose the material fact that Composix Kugel Hernia Patches, including the subject patch, would not function as intended when necessary;

f. omitting to disclose the material fact that Composix Kugel Hernia Patches, including the subject patch, were defective, such that they would break and/or splinter upon insertion or otherwise fail to function as intended when put to their expected, intended, foreseeable, and/or ordinary purpose(s); and

h. omitting to disclose the material fact that Composix Kugel Hernia Patches, including the subject patch, were inherently dangerous.

66. These misrepresentations and/or omissions of material fact were false and misleading at the time they were made.

67. Defendants DAVOL and BARD negligently and/or carelessly made the foregoing misrepresentations of material fact without basis or adequate information on which to accurately base those representations. Alternatively, the Defendants omitted the foregoing material facts

negligently and/or carelessly without basis or adequate information upon which to justify such omissions of material fact and/or with actual knowledge and information to make additional disclosure reasonable and appropriate.

68. Defendants had a duty to disclose all relevant information about the risks of their Composix Kugel Hernia Patches, including the subject patch, to Mr. Hyland and his treating physicians under laws requiring them not to engage in false and deceptive trade practices, and as otherwise alleged in this Complaint, because: A) Defendants made representations and partial disclosures concerning the nature and quality of their products which they had a duty to correct; B) Defendants were in a superior position to know the true state of facts about the dangerous and defective nature of their Composix Kugel Hernia Patches, including the subject patch, and the risks the subject patch posed to Mr. Hyland; and C) the effects and dangers posed by the defective Composix Kugel Hernia Patches, including the subject patch, were not readily apparent.

69. In the alternative, when the Defendants made the foregoing misrepresentations or omissions of material fact, they knew or should have known them to be false or omissions of material fact, and such misrepresentations and/or omissions of material fact were made intentionally, deliberately, knowingly, wantonly, recklessly and/or in a grossly negligent manner.

70. In reliance upon the foregoing misrepresentations and/or omissions of material fact by the defendant, Mr. Hyland and/or his physician(s) were induced to and did, to their detriment, subject themselves to using Defendants' Composix Kugel Hernia Patches, including the subject patch. Had the defendants not made the foregoing misrepresentations and/or omissions of material fact, Mr. Hyland and/or his physician(s) could have avoided such risks, injuries, and/or damages as are set forth herein, and/or considered alternative actions, treatments

or products. The reliance of Mr. Hyland and his physician(s) was justified and reasonable, because the foregoing misrepresentations and/or omissions of material facts were made by individuals and entities who were in a position to know the true facts, the Defendants.

71. General Business Law Section 349(a) declares unlawful any deceptive acts or practices in the conduct of any business, commerce or trade.

72. As a direct and proximate result of the aforedescribed conduct, misconduct and omissions, Mr. Hyland suffered serious and permanent injuries, economic losses associated with all aspects of the care and treatment of his injuries, as well as lost wages, any and all consequential damages, and punitive damages. Mr. Hyland will also seek interest, attorney fees, and costs.

73. The limitations of liability set forth by CPLR Sec. 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR Sec. 1602:

A) Pursuant to CPLR § 1602(2)(iv), Defendants are liable for all of Mr. Hyland's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants owed Mr. Hyland a non-delegable duty of care; and

B) Pursuant to CPLR § 1602(7), Defendants are liable for all of Mr. Hyland's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that the Defendants acted with reckless disregard of the safety of others.

74. As a result of the foregoing, Mr. Hyland has been damaged in a sum exceeding the jurisdictional amount of all lower courts.

75. By reason of their affirmative decisions, consent and/or authorization not to issue notices, warnings and/or instructions that would have accurately and completely conveyed the true risks and hazards of use of their Composix Kugel Hernia Patches at points in time relevant to the allegations giving rise to this complaint and at points in time when Defendants possessed such knowledge of the actual hazards, dangers and shortcomings of their Composix Kugel Hernia Patches, to patients and their treating physicians, and by virtue of Defendants' failure to take corrective action at such points in time, Defendants are liable for punitive damages in a sum that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction of this action.

## AS AND FOR A SECOND COUNT (NEGLIGENCE) AGAINST DEFENDANTS

76. Plaintiff repeats and reiterates paragraphs "1" through "75" as if specifically set forth herein.

77. At the aforementioned times, including the date of Plaintiff's bowel perforation and all other injuries resulting from the subject patch, and the date of surgical implantation of the subject patch, and for some time prior thereto, Defendants DAVOL and BARD were engaged in the business of designing, manufacturing, inspecting, testing, marketing, distributing, promoting, and/or selling Composix Kugel Hernia Patches, and their component parts, including the subject patch, throughout the United States, including the state of New York, for consumption and use by certain members of the general public, physicians and medical practices.

78. During said period of time, and for valuable consideration received, Defendants DAVOL and BARD, designed, tested, developed, manufactured, labeled, distributed, promoted, marketed and sold the subject defective patch that caused the injuries and damages set forth herein.

79. Defendants DAVOL and BARD had a duty, and owed a duty to the Plaintiff, to exercise reasonable care, in light of the generally recognized and prevailing best scientific knowledge, in the design, manufacture, testing, marketing, distributing, promoting, and/or selling of Composix Kugel Hernia Patches, including the subject patch, and their component parts. This duty included an obligation to ensure that the Composix Kugel Hernia Patches, including the subject patch: would function without danger to patients receiving them; did not contain recoil rings with welds that could break under the stress of placement; and did not otherwise break, shatter, split or malfunction when used for their intended purpose(s).

80. Defendants DAVOL and BARD breached their duties by negligently designing, manufacturing, testing, marketing, distributing, promoting and/or selling the subject patch, and its component parts, involved in the occurrence giving rise to this complaint.

81. Defendants DAVOL and BARD breached their duties by failing to exercise reasonable care in the production of the subject patch.

82. Defendants DAVOL and BARD breached their duties by failing to exercise reasonable care to ensure that their Composix Kugel Hernia Patches, including the subject patch, would function properly.

83. Defendants DAVOL and BARD knew or should have known that patients such as the Plaintiff would foreseeably suffer injuries as a proximate result of the failure to exercise ordinary, reasonable, and due care, as described herein.

84. Defendants DAVOL and BARD, as the designer, manufacturer, tester, marketer, distributor, promoter and/or seller of Composix Kugel Hernia Patches and their component parts, including the subject patch, negligently and/or recklessly breached their duties by failing to warn the Plaintiff and his treating physicians of the dangers associated with the use of the subject

patch due to its defective and unsafe condition as aforementioned, and such negligent and/or reckless conduct was a proximate cause of the injuries and damages of the Plaintiff.

85. At the aforesaid times, including when and while surgically implanted in Mr. Hyland, the subject patch and its component parts were being used in a manner that was foreseeable.

86. The subject patch and its component parts were not reasonably safe when being used in a foreseeable manner. Instead, the subject patch and its component parts were defective and unreasonably dangerous when being used for their intended purpose. Defendants DAVOL and BARD knew, or in the exercise of reasonable care should have known, that said patch and its component parts were defective and unreasonably dangerous when being so used in a foreseeable manner.

87. Defendants DAVOL and BARD failed to adequately and/or timely warn of the design and manufacturing defects of their Composix Kugel Hernia Patches, including the subject patch.

88. As a direct and proximate result of the aforedescribed breaches of duty, the Plaintiff suffered serious injuries and is entitled to damages for his serious and permanent injuries, pain and suffering, physical and emotional distress, lost wages and the amount of costs associated with medical treatment necessary to treat his injuries, any and all consequential damages, punitive damages, as well as interest, attorney fees, and costs.

89. The limitations of liability set forth by CPLR Sec. 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR Sec. 1602, as set forth above.

90. As a result of the foregoing, Plaintiff has been damaged in a sum exceeding the jurisdictional amount of all lower courts.

91. By reason of their affirmative decisions, consent and/or authorization not to issue notices, warnings and/or instructions that would have accurately and completely conveyed the true risks and hazards of use of their Composix Kugel Hernia Patches at points in time relevant to the allegations giving rise to this complaint and at points in time when Defendants DAVOL and BARD possessed such knowledge of the actual hazards, dangers and shortcomings of their Composix Kugel Hernia Patches, to patients and their treating physicians, and by virtue of Defendants' failure to take corrective action at such points in time, Defendants are liable for punitive damages in a sum that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction of this action.

**AS AND FOR A THIRD COUNT (STRICT LIABILITY)**
**AGAINST DEFENDANTS**

92. Plaintiff repeats and reiterates paragraphs "1" through "91" as if specifically set forth herein.

93. Defendants DAVOL and BARD were engaged in the business of designing, manufacturing, testing, marketing, distributing, promoting and/or selling Composix Kugel Hernia Patches, including the subject patch. Defendants Composix Kugel Hernia Patches were, and remain, guarantors of the safety of their Composix Kugel Hernia Patches, including the subject patch.

94. Defendants DAVOL and BARD intended and intends for patients to have their Composix Kugel Hernia Patches, including the subject patch, implanted in their bodies for the reasons described herein.

95. The subject patch and its component parts were defective in design.

96. Additionally, or alternatively, the subject patch and its component parts were defective in their construction or manufacture.

97. As a result of the aforedescribed design defects and/or manufacturing defects, the subject patch and its component parts were in a defective condition, unreasonably dangerous to the Plaintiff, and the subject patch was unfit for its intended use, at the time of sale by Defendants DAVOL and BARD, and at the time of implantation.

98. Composix Kugel Hernia Patches manufactured by Defendants DAVOL and BARD, including the subject patch, were defective and unreasonably dangerous when implanted, due to the possibility of breakage of the recoil ring weld, causing bowel and vascular injury, and/or other injury resulting from defect(s) in the product.

99. As a proximate result of the failures and actionable wrongful conduct herein alleged, the subject patch was in a defective condition, unreasonably dangerous in that it was unsafe for its intended use.

100. Defendants DAVOL and BARD were and remain strictly liable in tort for the design, manufacture, testing, inspection, distribution, promotion and/or sale of a defective product, the subject patch. Defects in the design and/or manufacture of the subject patch were substantial factors in bringing about the aforesaid occurrence and resulting serious injuries sustained by Mr. Hyland.

101. As a direct and proximate result of the defectively designed and manufactured subject patch, the Plaintiff suffered serious injuries and is entitled to damages for his serious and permanent injuries, pain and suffering, physical and emotional distress, lost wages and the amount of costs associated with medical treatment necessary to treat his injuries, any and all consequential damages, punitive damages, as well as interest, attorney fees, and costs.

102. The limitations of liability set forth by CPLR Sec. 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR Sec. 1602, as set forth above.

103. As a result of the foregoing, Plaintiff has been damaged in a sum exceeding the jurisdictional amount of all lower courts.

104. By reason of their affirmative decisions, consent and/or authorization not to issue notices, warnings and/or instructions that would have accurately and completely conveyed the true risks and hazards of use of their Composix Kugel Hernia Patches points in time relevant to the allegations giving rise to this complaint and at points in time when Defendants possessed such knowledge of the actual hazards, dangers and shortcomings of their Composix Kugel Hernia Patches, to patients and their treating physicians, and by virtue of Defendants' failure to take corrective action, such as a recall, at such points in time, Defendants are liable for punitive damages in a sum that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction of this action.

**AS AND FOR A FOURTH COUNT (BREACH OF IMPLIED WARRANTY) AGAINST DEFENDANTS**

105. Plaintiff repeats and reiterates paragraphs "1" through "104 as if specifically set forth herein.

106. Defendants DAVOL and BARD were and remain engaged in the business of designing, manufacturing, testing, marketing, distributing, promoting and/or selling Composix Kugel Hernia Patches, including the subject patch, and their component parts, for ultimate use by and implantation in the bodies of patients, including the Plaintiff, by and through physicians, hospitals, and other health-care providers.

107. Defendants DAVOL and BARD are merchants of Composix Kugel Hernia Patches.

108. By placing Composix Kugel Hernia Patches into the stream of commerce, the Defendants impliedly warranted and represented that their Composix Kugel Hernia Patches, such as the subject patch, were merchantable, and fit, suitable, and safe for their intended use(s).

109. The Plaintiff, individually and through his physicians, relied upon the skill and judgment of Defendants DAVOL and BARD.

110. The Plaintiff, individually and through his physicians, relied upon the representations and warranties of Defendants DAVOL and BARD.

111. All of the aforementioned representations were false, misleading and inaccurate in that Composix Kugel Hernia Patches placed into the stream of commerce by the Defendants, such as and including the subject patch, were defective, unreasonably dangerous, hazardous and neither merchantable, fit, suitable nor safe for their intended use(s).

112. Composix Kugel Hernia Patches placed into the stream of commerce by the Defendants, such as and including the subject patch, were also inadequately contained, packaged, and labeled in that the Defendants misrepresented and/or omitted material facts regarding the safety, reliability, and effectiveness of these products, which were neither merchantable, fit, safe nor suitable for their intended use(s).

113. The defects in the Composix Kugel Hernia Patches, including subject patch, such as defective recoil ring welds, were present at the time the product(s) left the hands of the Defendants and placed into the stream of commerce.

114. The Defendants thus breached implied warranties of merchantability, fitness and suitability with respect to the Composix Kugel Hernia Patches) such as and including the subject patch.

115. The Plaintiff was and remains an intended and foreseeable user of the Defendants' Composix Kugel Hernia Patches, and as a direct and proximate result of the Defendants' breach of implied warranties, he suffered serious injuries and is entitled to damages for his serious and permanent injuries, pain and suffering, physical and emotional distress, lost wages and the amount of costs associated with medical treatment necessary to treat his injuries, any and all consequential damages, punitive damages, as well as interest, attorney fees, and costs.

116. The limitations of liability set forth by CPLR Sec. 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR Sec. 1602, as set forth above.

117. As a result of the foregoing, Plaintiff has been damaged in a sum exceeding the jurisdictional amount of all lower courts.

118. By reason of their affirmative decisions, consent and/or authorization not to issue notices, warnings and/or instructions that would have accurately and completely conveyed the true risks and hazards of use of their Composix Kugel Hernia Patches points in time relevant to the allegations giving rise to this complaint and at points in time when Defendants possessed such knowledge of the actual hazards, dangers and shortcomings of their Composix Kugel Hernia Patches, to patients and their treating physicians, and by virtue of Defendants' failure to take corrective action at such points in time, Defendants are liable for punitive damages in a sum that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction of this action.

**AS AND FOR A FIFTH COUNT (BREACH OF EXPRESS WARRANTY) AGAINST DEFENDANTS**

119. Plaintiff repeats and reiterates paragraphs "1" through "118" as if specifically set forth herein.

120. Defendants DAVOL and BARD expressly warranted that their Composix Kugel Hernia Patches, including the subject patch, would be designed and constructed in a careful, diligent, and workmanlike manner, free of design and construction defects, and would be safe, reliable, and effective in performing their intended and foreseeable use(s).

121. Plaintiff, individually and through his physicians, relied upon the skill and judgment of Defendants DAVOL and BARD.

122. Plaintiff, individually and through his physicians, relied upon the representations and warranties of Defendants DAVOL and BARD.

123. All of the aforementioned representations were false, misleading and inaccurate in that Composix Kugel Hernia Patches placed into the stream of commerce by the Defendants, such as and including the subject patch, were defective, unreasonably dangerous, hazardous and neither merchantable, fit, suitable nor safe for their intended use(s).

124. The subject patch was not designed and/or constructed in a careful, diligent and workmanlike manner, free of design and construction defects.

125. Defendants DAVOL and BARD thereby breached their express warranties.

126. As a direct and proximate result of this breach of express warranties, the Plaintiff suffered serious injuries and is entitled to damages for his serious and permanent injuries, pain and suffering, physical and emotional distress, lost wages and the amount of costs associated with medical treatment necessary to treat his injuries, any and all consequential damages, punitive damages, as well as interest, attorney fees, and costs.

127. The limitations of liability set forth by CPLR Sec. 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR Sec. 1602, as set forth above.

128. As a result of the foregoing, Plaintiff has been damaged in a sum exceeding the jurisdictional amount of all lower courts.

129. By reason of their affirmative decisions, consent and/or authorization not to issue notices, warnings and/or instructions that would have accurately and completely conveyed the true risks and hazards of use of their Composix Kugel Hernia Patches points in time relevant to the allegations giving rise to this complaint and at points in time when Defendants possessed such knowledge of the actual hazards, dangers and shortcomings of their Composix Kugel Hernia Patches, to patients and their treating physicians, and by virtue of Defendants' failure to take corrective action at such points in time, Defendants are liable for punitive damages in a sum that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction of this action.

**AS AND FOR A SIXTH COUNT (FALSE ADVERTISING) AGAINST DEFENDANTS**

130. Plaintiff hereby adopts, repeats, and realleges by reference herein all the allegations contained in paragraphs "1" through "129" as though more fully set forth herein.

131. General Business Law Section 350 declares unlawful advertising that is false or misleading in a material respect in the conduct of any business or in the furnishing of any service.

132. The aforementioned acts, representations and/or omissions by Defendants were deceptive and misleading practices and/or advertising within the meaning of New York's General Business Law.

133. In reliance upon the foregoing misrepresentations and/or omissions of material fact by the defendant, the Plaintiff and/or the Plaintiff's physician(s) were induced to and did, to their detriment, subject themselves to using the Defendants' Composix Kugel Hernia Patches. Had the Defendants not made the foregoing misrepresentations and/or omissions of material fact, the Plaintiff and/or the Plaintiff's physician(s) could have avoided such risks, injuries, and/or damages as are set forth herein, and/or considered alternative actions, treatments or products. The reliance of the Plaintiff and the Plaintiff's physician(s) was justified and reasonable, because the foregoing misrepresentations and/or omissions of material facts were made by individuals and entities who were in a position to know the true facts.

134. As a direct and proximate result of the Defendants' false advertising, the Plaintiff suffered serious injuries and is entitled to damages for his serious and permanent injuries, pain and suffering, physical and emotional distress, lost wages and the amount of costs associated with medical treatment necessary to treat his injuries, any and all consequential damages, punitive damages, as well as interest, attorney fees, and costs.

135. The limitations of liability set forth by CPLR Sec. 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR Sec. 1602, as set forth above.

136. As a result of the foregoing, Plaintiff has been damaged in a sum exceeding the jurisdictional amount of all lower courts.

137. By reason of their affirmative decisions, consent and/or authorization not to issue notices, warnings and/or instructions that would have accurately and completely conveyed the true risks and hazards of use of their Composix Kugel Hernia Patches points in time relevant to the allegations giving rise to this complaint and at points in time when Defendants possessed such knowledge of the actual hazards, dangers and shortcomings of their Composix Kugel

Hernia Patches, to patients and their treating physicians, and by virtue of Defendants' failure to take corrective action at such points in time, Defendants are liable for punitive damages in a sum that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction of this action.

**AS AND FOR A SEVENTH COUNT (LOSS OF SERVICES, SOCIETY, COMPANIONSHIP AND AFFECTION ) AGAINST DEFENDANTS**

138. Plaintiff MARY JEAN HYLAND hereby adopts, repeats, and realleges by reference herein all the allegations contained in paragraphs "1" through "137" as though more fully set forth herein.

139. Plaintiff, MARY JEAN HYLAND, was and still is the wife and lawful spouse of THOMAS D. HYLAND and as such is entitled to his services, society, companionship and affection.

140. By reason of the foregoing, Plaintiff, MARY JEAN HYLAND, has lost the services, society, companionship and affection of her husband, THOMAS D. HYLAND, and has incurred expenses on his behalf.

141. The limitations of liability set forth by CPLR Sec. 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR Sec. 1602, as set forth above.

142. As a result of the foregoing, Plaintiff, MARY JEAN HYLAND, has been damaged in a sum exceeding the jurisdictional amount of all lower courts.

WHEREFORE, Plaintiffs demand judgment against Defendants DAVOL and BARD, their agents, servants, partners and/or employees on the First, Second, Third, Fourth, Fifth, Sixth and Seventh Causes of Action in a sum which exceeds the jurisdictional limits of all lower courts

that would otherwise have jurisdiction in this matter, together with the costs and disbursements of this action and interest.

Dated: New York, New York
January 23, 2007

BY: ______________________

ANDREW J. CARBOY
Sullivan Papain Block
McGrath & Cannavo P.C.
Attorneys for Plaintiffs
120 Broadway, 18th Floor
New York, New York 10271
(212) 732-9000
FAX: (212) 571-3903

VERIFICATION

STATE OF NEW YORK )
) SS.:
COUNTY OF NEW YORK )

Andrew J. Carboy, being duly sworn, deposes and says:

I am a member of the law firm of SULLIVAN PAPAIN BLOCK MCGRATH & CANNAVO P.C., attorneys for the plaintiffs herein.

I have read the foregoing VERIFIED COMPLAINT and know the contents thereof, and upon information and belief deponent believes the matters alleged therein to be true.

The source of deponent's information and the grounds of his beliefs are communications, papers, reports, deposition transcripts and investigations contained in the file. The reason why this affirmation is made by plaintiffs' counsel, and not the plaintiffs is because the plaintiffs do not reside in the county where plaintiffs' counsel maintains a law practice.

Andrew J. Carboy

Sworn to before me this

25 day of January, 2007.

Dylene Schifando
Notary Public

DYLENE SCHIFANDO
Commissioner of Deeds
No. 5-1402
Certificate Filed in New York County
Commission Expires ~~June 19,~~ 6/1/07